William L. Gavras, Esq.
GORMAN & GAVRAS
A Professional Corporation
118-A Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: 472-2302
Facsimile: 472-2342

Attorneys for Plaintiffs
ZYMA AUGUSTIN, MARITES
CACYAN, LILIBETH CASINO,
and MONA LISA MUSINGI



FILED
DISTRICT COURT OF GUAM
MAR 03 2003
MARY L. M. MORAN
CLERK OF COURT

IN THE U.S. DISTRICT COURT

OF GUAM

| | |
|---|---|
| ZYMA AUGUSTIN, MARITES CACYAN, LILIBETH CASINO, and MONA LISA MUSINGI, | CIVIL CASE NO. 02-00016 |
| Plaintiffs, | PLAINTIFFS' TRIAL BRIEF |
| vs. | |
| SEA VIEW ENTERPRISES, d/b/a MR. SUSHI and KAZUNARI WATANABE, | |
| Defendants. | |

Comes Now Plaintiffs by and through counsel and pursuant to Local Rule 16.7 and for their trial brief state as follows:

## Factual Contentions:

1. Plaintiff Zyma Agustin. Ms. Agustin, is of Filipino ethnicity and was employed by Defendant from approximately August 15, 2000 to May 17, 2001. Throughout her employment she was subjected to her employer, Kazunari Watanabe, denigrate Filipinos. Mr. Watanabe would compare Filipinos to pigs and make other derogatory remarks. These remarks

made her work environment oppressive. Because of the oppressive environment, she was forced to resign her employment and thereby lost income. Also, she suffered emotionally from her employer's wrongful actions.

2. Plaintiff Marites Cacyan. Ms. Cacyan is of Filipino ethnicity and was employed by Defendant from approximately July 24, 2000 to April 2, 2001. Throughout her employment she was subjected to her employer, Kazunari Watanabe denigrate Filipinos. Mr. Watanabe would compare Filipinos to pigs and make other derogatory remarks. These remarks made her work environment oppressive.

    Additionally, throughout her employment, Mr. Watanabe would pat her on her buttocks with his hand without her consent. These actions would make her work environment oppressive.

    Because of the oppressive environment, she was forced to resign her employment and thereby lost income. Also, she suffered emotionally from her employer's wrongful actions.

3. Plaintiff Lilibeth Casino. Ms. Casino is of Filipino ethnicity and was employed by Defendant from approximately January 18, 2001 to May 21, 2001 and from June 8, 2001 to August 2001. Throughout her employment she was subjected to her employer, Kazunari Watanabe denigrate Filipinos. Mr. Watanabe would compare Filipinos to pigs and make other derogatory remarks.

Additionally, he would tell Ms. Casino that he did not have Filipino girlfriends because he said Filipinos are not good and only wanted money. Without her consent he began massaging her shoulders in July of 2001. He made suggestive comments to her when a door hit his upper legs. Ms. Casino also witnessed him sexually harassing another female coworker. These remarks and actions made her work environment oppressive. Because of the oppressive environment, she was forced to resign her employment and thereby lost income. Also, she suffered emotionally from her employer's wrongful actions.

4. Plaintiff Mona Liza Musingi. Ms. Musingi is of Filipino ethnicity and was employed by Defendant from approximately December 4, 2000 to April 4, 2001. Throughout her employment she was subjected to her employer, Kazunari Watanabe denigrate Filipinos. Mr. Watanabe would compare Filipinos to pigs and make other derogatory remarks. These remarks made her work environment oppressive. Because of the oppressive environment, she was forced to resign her employment and thereby lost income. Also, she suffered emotionally from her employer's wrongful actions.

## LEGAL BRIEF

### Harassment Based on Ethnicity

A plaintiff employee may recover for harassment based on ethnicity by the employer under Title VII. The employee must prove that he or she has suffered a

"hostile work environment" by showing pursuant to Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)[1]:

1. The employee is a member of a protected class;

2. He or she was subjected to harassment, either through words or actions, based on ethnicity;

3. The harassment had the effect of un-reasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. There exists some basis for liability on the part of the employer.

Under the third prong, the harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. That is, conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. Likewise, the victim himself or herself must perceive the environment to be abusive, demonstrating that the conduct has actually altered the conditions of the victim's employment. See Harris, 510 U.S. at 21.

The Supreme Court recently ruled on employer liability in harassment cases under Title VII. In two companion sexual harassment cases, Faragher v. City of Boca Raton and Burlington Indus. v. Ellerth, the Court determined that employers

---

[1] Title VII claims based on ethnicity are analyzed as are Title VII claims based on race. Lalvani v. Cook County, 269 F.3d 785 (7th Cir. 2001)

are vicariously liable for the sexual harassment by a supervisor which results in a tangible employment action, such as discharge, demotion or undesirable reassignment, to the plaintiff, historically characterized as *quid pro quo* harassment. However, if the harassment does not result in a tangible employment action, or is not the *quid pro quo* type, the employer may raise an affirmative defense consisting of two elements [*Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2293 (1998); *Burlington Indus., Inc. v. Ellerth*, 118 S. Ct. 2257, 2270 (1998)]:

1. the employer must show by a preponderance of the evidence that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

2. the employer must show by a preponderance of the evidence that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Courts apply the standards of *Faragher* and *Ellerth* to harassment cases based on race discrimination under Title VII. *See, e.g., Livingston v. Adirondack Beverage Co.*, 141 F.3d 434 (2d Cir. 1998) (holding that a supervisor's use of the term "spic" three times to a Hispanic employee was sufficient to create a hostile environment); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581 (5th Cir. 1998) (applying *Faragher* and *Ellerth* to a case involving the discharge of a white female employee due to her romantic relationship with a black male employee); *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264 (10th Cir.

1998) (holding that the standards for hostile-environment racial harassment are the same as those for hostile-environment sexual harassment).

**Damages**

Plaintiffs are entitled to compensatory damages for past and future pecuniary losses such as lost wages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses pursuant to 42 U.S.C. § 1981a(b)(3). Compensatory damages under the statute definition do not include any award of back pay or interest on back pay pursuant to 42 U.S.C. § 1981a(b)(2) which Plaintiff is also entitle to recover, as well as any attorney fees and costs awarded pursuant to 42 U.S.C. § 2000e-5(k), see infra.

Moreover, punitive damages in Title VII actions are allowed pursuant to 42 U.S.C. § 1981a(b)(1). Please see Kolstad v. American Dental Association, 527 U.S. 526 (1999).

> **Sec. 1981a. - Damages in cases of intentional discrimination in employment**
>
> .... .
> (b) Compensatory and punitive damages
>
> (1) Determination of punitive damages
>
> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

The *Kolstad* court explained that the terms "malice" and "reckless" ultimately focus on the actor's state of mind as same pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination. at 535. To be liable for punitive damages, the employer must at least discriminate in the face of a perceived risk that its actions will violate federal law. *Id.* at 536. The *Kolstad* court held that a plaintiff is not required to show egregious or "outrageous" discrimination independent of the employer's state of mind. at 546. The decision distinguishes the statutory standard for punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) as considerably lower than what is traditionally required to recover punitive damages at common law.

## Sexual Harassment.

Under the facts of this case, the Plaintiffs Marites Cacyan and Lilibeth Casino were subjected to "Hostile Environment" harassment. Sexual harassment occurs in this instance when an employer subjects an employee to sexual innuendoes, remarks, and physical acts so offensive as "to alter the conditions of the employee's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

The elements of "Hostile Environment" harassment were set forth in *Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 873 (5th. Cir. 1999) as follows:

1. the employee was a member of a protected class;

2. the employee was subjected to unwelcome sexual harassment;

3. the harassment complained of was based on sex; and

4. the harassment complained of affected a term, condition or privilege of employment.

The claims of sexual harassment, including claims for damages arising therefrom, are analyzed as are claims for harassment based on ethnicity. *See, supra.*

## EVIDENTIARY PROBLEMS

Plaintiff does not foresee any evidentiary problems at this time, but reserves the right to make objections to evidentiary problems at a future date, if and when any evidentiary problems become known.

## ATTORNEY FEES

Under Title VI, attorney fees and costs are recoverable to the prevailing party pursuant to 42 U.S.C. § 2000e-5(k). Even an award of nominal damages can entitle a plaintiff to an award of attorney fees and costs. *Please see* Farrar v. Hobby, 506 U.S. 103 (1993); Brandau v. State of Kansas, 168 F.3d 1179 (10th Cir. 1999). Moreover, while 42 U.S.C. § 2000e-5(k) is a fee shifting statute, it usually only shifts in the direction of a prevailing plaintiff [EEOC v. Christianburg Garment Co., 434 U.S. 412 (1978); Newman v. Piggie Park Enterprises, Inc., 390 .S. 400 (1968)] absent a frivolous complaint brought in bad faith or otherwise brought without legal foundation to annoy and harass the defendant. *Roadway Express v. Piper,* 447 U.S. 752 (1980).

## ABANDONMENT OF ISSUES

Plaintiffs have abandoned no issues at this time.

## CONCLUSION

Based on the foregoing, Plaintiffs are seeking and is entitled to all relief demanded in the Complaint based on both causes of action contained therein.

Dated: March 1, 2003

GORMAN & GAVRAS

By: WILLIAM L. GAVRAS, ESQ.
Attorneys for Plaintiffs
ZYMA AUGUSTIN, MARITES CACAYAN, LILIBETH CASINO, and MONA LISA MUSINGI

## CERTIFICATE OF SERVICE

I certify that I will cause to be served upon David Rivera, Esq. a true and correct copy of this document on or before March 3, 2003.

GORMAN & GAVRAS

Date: March 1, 2003.

BY: WILLIAM L. GAVRAS, ESQ.
Attorneys for Plaintiffs